UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ASHLEY J. BECKER,                    )
                                     )    No. CV-07-073-CI
          Plaintiff,                 )
                                     )    ORDER GRANTING PLAINTIFF'S
v.                                   )    MOTION FOR SUMMARY JUDGMENT
                                     )    AND DIRECTING AN IMMEDIATE
MICHAEL J. ASTRUE,                   )    AWARD OF BENEFITS
Commissioner of Social               )
Security,                            )
                                     )
          Defendant.                 )
                                     )
                                     )
                                     )
_____    )

    BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 15, 20.)  Attorney Rebecca Coufal represents Plaintiff; Special
Assistant United States Attorney Franco L. Becia represents
Defendant.    The parties have consented to proceed before a
magistrate judge. (Ct. Rec. 6.)  After reviewing the administrative
record, the briefs filed by the parties, and considering oral
argument, the court **GRANTS** Plaintiff's Motion for Summary Judgment
(**Ct. Rec. 15**) and directs an immediate award of benefits.
Defendant's Motion for Summary Judgment (**Ct. Rec. 20**) is **DENIED**.

                          **JURISDICTION**

    Plaintiff protectively filed her applications for disability
insurance benefits ("DIB") and Social Security Income ("SSI")
benefits in May of 2004, alleging an inability to work since January
20, 2004, due to depression and a personality disorder. (Tr. 58-60,
69-72, 88.)  Benefits were denied initially and on reconsideration.

(Tr. 43-44, 47-50.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard A. Say on July 26, 2006. (Tr. 400-432.) Plaintiff, who was present and represented by counsel, medical expert Allen Bostwick, Ph.D., and vocational expert Tom Moreland testified. (Id.) The ALJ denied benefits and the Appeals Council denied review. (Tr. 5-8, 11-23.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 38 years old and had completed part of the tenth grade of high school. (Tr. 94, 414.) Although Plaintiff has not earned a GED, she has passed every test toward obtaining her general diploma except math. (Tr. 262.) Plaintiff has worked as a fast food cashier/worker, cook-daycare worker, kitchen worker and crossing guard. (Tr. 79.) At the hearing, Plaintiff testified that she was not currently taking prescribed medication because she was pregnant and it made her ill. (Tr. 421.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides a Plaintiff will be determined to be under a disability

only if impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe so as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), 20 C.F.R. § 404 Appendix 1, Subpart P. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 3

a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experiences. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 ((9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made though an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more then a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative

findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At the onset the ALJ found that Plaintiff remained insured through September 30, 2008.  She therefore was required to establish disability prior to this date.  (Tr. 11.)  The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue.  (Tr. 13.)  At steps two and three, the ALJ found the medical evidence established that during the relevant time frame, Plaintiff suffered from depression, a severe impairment, but not severe enough to meet or medically equal one of the Listed impairments.  (Tr. 13, 18.)  The ALJ found that Plaintiff is not fully credible and has the RFC to perform a significant range of medium work with noted non-exertional limitations.[1]  (Tr. 18-19.)  At step four, relying on a vocational expert's testimony, the ALJ found that Plaintiff was able to perform her past relevant work as a kitchen worker.  (Tr. 22-23.)  Accordingly, the ALJ determined at step four of the sequential

---

[1] The ALJ's hypothetical assumed an individual who is able to:

[U]nderstand, remember, and carry out simple instructions and procedures.  She's able to attend and persist on simple tasks.  She can carry out superficial task-related social interactions appropriately.  She would have limitations with more demanding interactions with the public and working in close cooperation with others.  She can make simple adjustments to change.  She may require relatively structured duties.

(Tr. 424-425.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 6

evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 23.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that the ALJ erred when he weighed the medical evidence. (Ct. Rec. 16 at 11-22.) At oral argument, Plaintiff requested that the court grant her motion for summary judgment and direct an immediate award of benefits; alternatively, Plaintiff asked that if the court found that the medical evidence or the hypothetical to the vocational expert (VE) was not sufficiently clear to support awarding benefits that the case be remanded for further administrative proceedings.

The Commissioner opposed the Plaintiff's Motion and asks that the ALJ's decision be affirmed. (Ct. Rec. 21 at 6-20.)

**DISCUSSION**

**A.    Weighing Medical Evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more

weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9ᵗʰ Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9ᵗʰ Cir. 1995).  If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence.  *See Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1463 (9ᵗʰ Cir. 1995).

    1.   <u>Personality Disorder</u>

    The ALJ did not include a step two finding that Plaintiff suffered from the severe impairment of a personality disorder. Plaintiff contends that this is error. (Ct. Rec. 16 at 11-14.)  The Commissioner concedes error but argues it is harmless because the ALJ included limitations caused by a personality disorder in his hypothetical; moreover, the Commissioner alleges that the limitations assessed by the ALJ are more restrictive than those assessed by Dr. Bostwick, who found Plaintiff suffered from a personality disorder.[2]

    An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to

---

    [2] An error is harmless when the correction of that error would not alter the result.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9ᵗʰ Cir. 1995).  Further, an ALJ's decision will not be reversed for errors that are harmless.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9ᵗʰ Cir. 2005)(*citing Curry v. Sullivan*, 925 F.2d 1127, 1131 (9ᵗʰ Cir. 1990).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 8

work." *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at 687; *see also Yuckert*, 841 F.2d at 306.

In this case, the ALJ found that Plaintiff suffered from the severe impairment of depression but did not find that she also has a personality disorder. The Commissioner argues that failing to identify a severe impairment at step two is harmless error when the ALJ discusses the impairment and its resulting limitations, citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) and *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007), *pet. for cert. pending*.

The *Lewis* court found, assuming that the ALJ erred in neglecting to list a specific impairment (bursitis) at step two, that any error was harmless:

> The ALJ extensively discussed Lewis's bursitis at step 4 of the analysis, observing that '[t]he claimant also had

left-sided greater trochanteric bursitis.' The decision also stated that x-rays showed osteoarhtritic changes in Lewis's left knee; that Lewis's straight leg raise was 'negative'; that Lewis had decreased sensation on his left leg; that Lewis was restricted from prolonged standing and walking; and that Lewis could not do repetitive squatting, kneeling, crouching and crawling. The decision reflects that the ALJ considered any limitations posed by the bursitis at step 4. As such, any error that the ALJ made in failing to include the bursitis at step 2 was harmless.

*Lewis*, 498 F.3d at 911.

In this case, after reviewing Plaintiff's records, medical expert Allen Bostwick, Ph.D., diagnosed depressive disorder, not otherwise specified, with elements of major depressive disorder and dysthymia, and personality disorder, nos, with histrionic, dependent and inadequate traits. (Tr. 406.) He opined that Plaintiff possibly has some borderline traits "although those aren't clearly supported by the entire record." (Tr. 406.) (He also noted that Plaintiff has a history of cannabis abuse that does not appear material to the time at issue (Tr. 406.).) It is unclear from Dr. Bostwick's testimony, and from the record as a whole, which limitations may be attributed specifically to personality disorder rather than depression. The Commissioner's contention that the ALJ assessed greater limitations than Dr. Bostwick is factually incorrect. In response to questioning by Plaintiff's counsel, Dr. Bostwick endorsed the four limitations assessed by agency physician Gerald Gardner, Ph.D.; these are the limitations the ALJ included in his hypothetical to the VE. (Tr. 409-410; 424-425.) This case is similar to *Lewis* in that the ALJ did not end his evaluation at step two and dismiss Plaintiff's claim; the ALJ went on to find that Plaintiff suffers limitations as indicated by medical professionals.

Accordingly, any error by the ALJ in failing to assess personality disorder as a severe impairment at step two appears harmless given the specific facts in this case.

2. <u>Opinion of Testifying Expert</u>

Plaintiff claims the ALJ improperly relied on the opinion of the testifying expert rather than the opinions of treating and examining mental health professionals. (Ct. Rec. 16 at 16-18.) The Commissioner responds that the ALJ properly rejected the opinions of treating mental health professionals based on Dr. Bostwick's opinion, among other reasons. (Ct. Rec. 21 at 14-16.)

At the hearing the ALJ noted some of the exhibits indicate that Plaintiff was not "too impaired and then others seemed to indicate she was very impaired," and asked Dr. Bostwick to comment. (Tr. 406-407.) He responded that: 1) early on, providers suspected that Plaintiff suffered from bipolar disorder. The problems associated with the symptoms of this disorder are more marked than with the depressive condition Plaintiff was later diagnosed; 2) Plaintiff's three documented hospitalizations would normally suggest "more marked limitations in impairment than the brevity that two of them would suggest"; and 3) Plaintiff's counselor, an undergraduate student, assessed functionally greater deficits than the psychiatrist from the same facility or from Sacred Heart Medical Center. (Tr. 407-408.) Dr. Bostwick noted that Plaintiff had no mental health treatment history until January of 2004, when she was 35 or 36 years old. Her first hospitalization was precipitated by her spouse refusing to give her a divorce and her goal upon release was to have assistance with housing. (Tr. 407-408.) He observed

that when Plaintiff was hospitalized the second time, in August of 2005, "she had stopped taking most of her medications due to her pregnancy at that time. And that occurred in a background of relative stability on medications except for conflicts noted with the boyfriend." (Tr. 408.) Dr. Bostwick opined "there were some situational factors and suggesting some possible secondary gain for relative decompensations, too, that in my opinion, mitigate the severity of her mental illness." (Tr. 408.)

Dr. Bostwick appears to misread the record. Plaintiff stopped taking her medications in July of 2005, when she described to Dr. Eliason the unpleasant side effects she was suffering. (Tr. 282.) As a result, on July 29, 2005, Dr. Eliason changed Plaintiff's prescription to klonopin and planned to gradually add lamictal. (Tr. 282.) Plaintiff's second hospitalization occurred August 12, 2005, through August 23, 2005. (Tr. 203.) Information as to Plaintiff's first pregnancy (after onset) appears in the record on April 14, 2006, when she told Dr. Eliason she was pregnant. (Tr. 281, 289.) (Plaintiff also testified that she was not pregnant in 2005) (Tr. 417). Dr. Bostwick's opinion that Plaintiff discontinued her medication before being hospitalized in August of 2005 due to pregnancy is incorrect.

Dr. Bostwick is mistaken in other respects. He estimated that Plaintiff's second hospitalization in August of 2005 lasted four to five days. He described it as "relative decompensation." (Tr. 407-408.) As noted, in August of 2005, Plaintiff was hospitalized for eleven days. (Tr. 203.) Rather than "relative decompensation," it was described by Plaintiff's treating counselor and her psychiatrist

as a "significant suicide attempt." (Tr. 203.)

Dr. Bostwick opined that Plaintiff's primary limitations appear to be social. He assessed moderate limitations when interacting with the public. (Tr. 409.) Dr. Bostwick testified that he agreed with the February of 2005 agency assessment by Dr. Gardner. (Tr. 409-410, referring to Tr. 219.)

The ALJ explicitly adopted the opinions of Drs. Bostwick and Gardner. (Tr. 21.) Dr. Bostwick's opinion appears based, in part, on a misreading of the record. Because the ALJ relied on Dr. Bostwick's erroneous opinion, the ALJ's decision is not free of error.

3.   <u>Treating, Examining and Consulting Professionals</u>

Plaintiff contends that the ALJ failed to properly credit the opinion of her treating therapist, Chris Smith, and of her psychiatrist, Scott Eliason, M.D. (Ct. Rec. 16 at 14-18.) The Commissioner responds that the ALJ properly assessed the medical evidence, including the testimony of the medical expert and of agency psychologist Dr. Gardner. (Ct. Rec. 21 at 6-18.) For reasons previously discussed, the ALJ erred in relying on Dr. Bostwick's opinion as it appears partially based on a misreading of the record and is an error that does not appear harmless. The opinion of a consulting psychologist cannot alone support the ALJ's rejection of the opinions of the treating mental health professionals; accordingly, the opinions of the treating and examining professionals must be analyzed.

On January 20, 2004 (onset date), Plaintiff was hospitalized for an apparent suicide attempt. (Tr. 143.) Plaintiff presented

with reports of depression and possible overdose.  She reported taking a handful of Tylenol tablets "due to problems she felt about her marriage." (Tr. 143.)  Plaintiff admitted episodic marijuana use and a strong family history of mental illness, including suicide.  She was given activated charcoal, referred to psychiatric triage and admitted to the hospital. (Tr. 143.)

Plaintiff stated she had been depressed and anxious for years prior to the attempt. (Tr. 145.)  She identified multiple stressors in her life and denied prior counseling or medication.  Plaintiff appeared anxious and depressed and continued to feel suicidal.  Tr. 145-146.)  James Frazier, M.D., opined that Plaintiff would benefit from medication and counseling. (Tr. 146.)  He diagnosed major depression status post serious suicide attempt, stressors, and a GAF of 25.[3] (Tr. 146.)  While hospitalized Plaintiff tested positive for marijuana.[4] (Tr. 156.)

---

[3]  A Global Assessment of Functioning Scale (GAF) of 25 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home or friends). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

[4]  Although Plaintiff admitted she used marijuana in the past in an attempt to treat depression, later hospitalizations did not yield positive results for marijuana or other illicit substances.  An agency assessment on July 15, 2004, found no clear substance abuse pattern. (Tr. 209.)  At oral argument, the parties agreed that the

After 23 days at Sacred Heart Hospital, Plaintiff was transferred to Eastern State Hospital (ESH) on February 12, 2004, for further care and treatment. (Tr. 147, 152.) After about two months, on April 14, 2004, Plaintiff was released from ESH on a court-ordered 90-day LRA (least restrictive alternative to hospitalization). (Tr. 147-151.) Upon release from ESH, James Basnillo, M.D., diagnosed major depressive disorder, not otherwise specified (dysthymia v. bipolar II disorder with recent episode depression); marijuana abuse, by history; moderate to severe stressors, and a discharge GAF of 60-70.[5] Plaintiff agreed to release conditions, which included continued use of psychotropic medications and counseling. (Tr. 150-151.)

On February 2, 2004, Family Service Spokane diagnosed Plaintiff with major depressive disorder, single episode, severe, and a GAF of

---

minimal references to drug use do not trigger analysis pursuant to *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). The court agrees with the parties that substance abuse does not appear to materially contribute to Plaintiff's disability.

[5] A GAF of 60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers and co-workers). A GAF of 61 to 70 indicates some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships. (DSM-IV), at 32.

20.[6]

About a year later, on January 4, 2005, Joyce Everhart, Ph.D., examined Plaintiff. (Tr. 211.) She reviewed the ESH records and administered several tests. Plaintiff felt "much sadness," lethargy, and found it difficult to get motivated. (Tr. 211.) She sometimes felt suicidal. Dr. Everhart noted claimant thought the cause of "her trouble [was] that she has always been depressed." (Tr. 211.) Plaintiff described her roughly two months of treatment at ESH as very beneficial. (Tr. 211.) Dr. Everhart observed that Plaintiff appeared anxious, depressed, and somewhat over medicated. (Tr. 213.) Plaintiff met with friends, worked on arts and crafts, and fixed and rode bikes. (Tr. 214.) She was working on obtaining her GED. (Tr. 213.) The main reason Plaintiff felt she could not work was that she "cannot concentrate long enough to do anything that she is supposed to do." (Tr. 214.) Dr. Everhart diagnosed bipolar I disorder, mixed, primarily depressed, with psychotic features; cognitive disorder NOS (provisional)(including difficulty with executive function, appeared somewhat over medicated, and environmental stressors. She assessed a current GAF of 60 and opined that the highest in the past year was 60-70. (Tr. 214-215.) Dr. Everhart noted Plaintiff's attention and concentration appeared

---

[6] A GAF of 20 indicates some danger of hurting self or others (*e.g.*, suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (*e.g.*, smears feces) or gross impairment in communication (*e.g.*, largely incoherent or mute). (DSM-IV), at 32.

to be below normal; she was likely able to complete simple one or two-step tasks of a repetitive nature but may have difficulty with complex multi-step tasks; her pace was slow and persistence was compromised by the interaction of her psychological symptoms, and manic states may require help with managing funds.  (Tr. 215.)

As previously noted, on February 5, 2005, agency psychologist Gerald Gardner, Ph.D., assessed Plaintiff based on his record review.  (Tr. 217-219.)  Dr. Gardner assessed Plaintiff as moderately limited in nine areas: the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the workplace.  (Tr. 217-219.)  He opined that Plaintiff was able to understand and remember simple instructions and procedures, attend to and persist at simple tasks and process some detail of procedure, and appropriately carry out superficial, task-related social interactions.  (Tr. 219.)  Plaintiff likely had limitations with more demanding interactions with the public and with working in close cooperation with others.  Dr. Gardner opined that Plaintiff was able to make simple adjustments to change but may require relatively structured duties.  (Tr. 219.)  Dr. Gardner reviewed Dr.

Everhart's test results and found them positive for malingering. (Tr. 234.)  Dr. Gardner opined that Plaintiff's allegations are partially credible. (Tr. 234.)  He the stated: "[h]er condition is judged to be severe." (Tr. 234.)

On March 21, 2005, Plaintiff was examined by Shannon Schoonover, M.S. (Tr. 257-263A.) (As Ms. Schoonover's findings were adopted by Frank Rosenkrans, Ph.D. (Tr. 263A), for clarity the report will be attributed to Dr. Rosenkrans.)  Dr. Rosenkrans noted Plaintiff sees a counselor weekly and a psychiatrist at Spokane Mental Health monthly. (Tr. 260-261.)  She takes lithium and topomax for bipolar disorder, effexor for depression, and seroquel for anxiety and headaches. (Tr. 261.)  Plaintiff had taken lithium for about a year and found it helpful in controlling her moods.  She described a history of manic episodes, including being up for weeks. Plaintiff was described as sleeping two hours a night. (Tr. 261.) Dr. Rosenkrans diagnosed bipolar II disorder, most recent episode depressed; an axis II diagnosis was deferred with dependent traits, and a current GAF of 49 assessed.[7] (Tr. 258.)  Dr. Rosenkrans assessed six moderate impairments, and a single marked impairment – the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 259.)  Dr. Rosenkrans diagnosed Plaintiff as "seriously disturbed" but opined that the severity of her symptoms was likely to last a maximum of

---

[7] A GAF of 49 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). (DSM-IV), at 32.

nine months.  (Tr. 260.)

On July 29, 2005, Plaintiff saw her psychiatrist at Spokane
Mental Health, Scott Eliason, M.D.  (Tr. 282.)[8] She explained that
she suffered side effects from her medications and had discontinued
them.  (Tr. 282.)  Dr. Eliason began Plaintiff on klonopin.  (Tr.
282.)  As noted, from August 12, 2005, through August 23, 2005,
Plaintiff was hospitalized for the second time; her treatment
providers later described this as the result of a "significant
suicide attempt."  (Tr. 303.)

On November 13, 2005, Plaintiff was admitted to the hospital
for psychiatric services for the third time.  (Tr. 265.)  She
admitted "acutely and emergently" as a volunteer patient for
management of depression with suicidal ideation, initially
expressing uncertainty about "her commitment to staying alive."
(Tr. 265.) Plaintiff told John Moulton, M.D., that she ran out of
money and was unable to pay her rent.  (Tr. 265.)  Two days later
Plaintiff was discharged from the hospital in improved and stable
condition.  She planned to move into more stable housing.  (Tr.
265.)  At discharge, Dr. Moulton diagnosed atypical bipolar
disorder, by history, with history of positive response to lithium
(by report), borderline personality, organization and behaviors with
a possible histrionic subtype, and a discharge GAF of 55.  (Tr.
266.)[9]  On December 9, 2005, Dr. Eliason changed Plaintiff's

---

[8] Plaintiff's previous psychiatrist at Spokane Mental Health
was Dr. Bennett.  (Tr. 430.)

[9] A GAF of 55 indicates moderate symptoms (*e.g.*, flat affect
and circumstantial speech, occasional panic attacks) or moderate

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 19

1  diagnosis from bipolar disorder to depression NOS and borderline
2  personality disorder.   (Tr. 285.)   In light of the changed
3  diagnosis, Dr. Eliason again discontinued lithium and prescribed
4  klonopin; he also prescribed Prozac. (Tr. 285.) By December 30,
5  2005, Dr. Eliason noted Plaintiff was doing quite well but she
6  requested and he approved an increase in her antidepressant. (Tr.
7  286.) Dr. Eliason increased Plaintiff's Prozac again on February
8  22, 2006. (Tr. 287.) On April 14, 2004, Plaintiff told Dr. Eliason
9  she was pregnant and had stopped taking her medications. (Tr. 289.)
10  He prescribed ambien as needed for sleep and noted: "continue close
11  observation of this patient." (Tr. 289.)

12      On July 7, 2006 (about three weeks prior to the hearing), a
13  letter signed by Plaintiff's counselor/case manager Chris Smith,
14  B.A., candidate, Esa Logan, MHP, Clinical Supervisor, and treating
15  psychiatrist Dr. Eliason opined:

16         I have been working with Ms. Becker as her mental
17  health/case manager since she enrolled in services in 02-02-04. . . .

18         In the time that I have been working with Ms. Becker,
19  I have observed the symptoms of her disorder to cause her
    to have become increasingly disabled.   Although she
20  receives medication management and psychiatric care from
    Spokane Mental Health, she struggles with severe mood
21  lability, primarily depression.   She is impulsive, lacks
    ability to follow through, and has difficulty attending
22  appointments even when attendance is contingent on meeting
    her basic needs.   She is frequently in crisis and has
23  difficulty sustaining housing.   The symptoms of her
    disorder include hopelessness, helplessness, lack of
24  motivation, lack of control, anger, poor appetite,
    impaired sleep, poor judgment, little insight and
25  engagement in high risk behaviors, relationships and
    situations. . . .

26  ————————

27  difficulty in social, occupational or school functioning (*e.g.*, few
28  friends, conflicts with peers or co-workers).  DSM-IV, at 32.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 20

Ms. Becker has consistently demonstrated difficulty maintaining in the community.  She has been assisted in accessing housing on at least three different occasions;[10] however, is unable to sustain independent living due to continued difficulty managing her finances, following through with expectations of housing resources, conflict with other residents and housing management and using poor judgment in not utilizing the Section 8 housing voucher that she was approved.

Ms. Becker has five children that she is unable to care for and they are in the custody of their biological father.  She is currently homeless and coping with an unplanned pregnancy, the result of an abusive relationship.  She has voiced intention to give up the child for adoption, recognizing that she does not have the skill or ability to meet the child's needs.[11]  . . .  I believe at this time, the symptoms of Ms. Becker's mental health disorder prevent her from achieving and sustaining substantial gainful activity.

(Tr. 303-304.)

On the same date, treating mental health providers Dr. Eliason and Mr. Smith assessed Plaintiff with four moderate and seven marked limitations.  (Tr. 306-307.)

The ALJ does not give reasons for rejecting the opinions of the treating and examining mental health providers; instead, he finds Dr. Bostwick's assessment persuasive and concurs in his testimony. (Tr. 18.)  As noted, Dr. Bostwick's opinion appears partially based on a misreading of the record.  Dr. Bostwick's opinion also does not address the nine moderate limitations assessed by Dr. Gardner, whose opinion Dr. Bostwick purports to adopt.  The ALJ does not give

---

[10] At the hearing Plaintiff testified she was homeless.  (Tr. 414.)  She was living at various times at the homes of her former spouse, her mother, and her daughter.  (Tr. 418.)

[11]At oral argument Plaintiff's counsel advised that Plaintiff gave the child up for adoption.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 21

reasons for disregarding Dr. Gardner's nine assessed moderate limitations and does not include them in his hypothetical to the VE. When Plaintiff's attorney asked the VE whether a person with the nine moderate limitations assessed by Dr. Gardner could perform any work, the VE said no, due to the severity of the limitations. (Tr. 427-429.)

**B.   Remedy**

There are two remedies where the ALJ fails to give adequate reasons for rejecting the opinion of a treating or examining doctor. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester*, 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke*, 379 F.3d at 594 (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for findings, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). *Lester* is the appropriate rule to apply in the captioned matter. When credited as a matter of law, it is clear from the opinions of most of the mental health professionals, with the exception of the testifying expert, that Plaintiff is disabled. Accordingly,

1        **IT IS ORDERED:**

2        1.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15 )** is

3    **GRANTED;** this matter is **REMANDED for payment of an immediate award**

4    **of benefits;**

5        2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 20)** is

6    **DENIED;**

7        3.    Judgment shall be entered for **Plaintiff.**  An application

8    for attorney fees may be filed by separate motion.

9        The District Court Executive is directed to file this Order and

10   provide a copy to counsel for Plaintiff and Defendant. Judgment

11   shall be entered for Plaintiff and the file shall be **CLOSED.**

12       DATED December 13, 2007.

13

14                          _____S/ CYNTHIA IMBROGNO_____
                              UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING AN IMMEDIATE AWARD OF BENEFITS – 23